UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MARC ANDRE,

                              Plaintiff,        :        Civil Action. No._____

               v.

MATTRESS FIRM,

                          Defendant.   :        **JURY TRIAL DEMAND**

------------------------------------------------------------X

## NATURE OF THE ACTION

        This is an action under the Americans with Disabilities Act of 1990, as amended, 2008, and the New York Human Rights Law to correct unlawful employment practices in discriminating against and retaliating against a disabled Assistant Sales Manager, plaintiff Marc Andre.  As charged with greater particularity below, defendant employer discriminated against plaintiff on the basis of his severe dyslexia disability, refused to grant plaintiff's request for reasonable accommodation of his job duties, and then retaliated against him for having requested the accommodations.  Defendant actions violated ADA and the Human Rights Law, as defendant first made insufficient and ineffective attempts to accommodate his job duties, denied him promotion, and later demoted him and substantially changed Andre's job duties in retaliation for his requests that defendant consider reasonable accommodations.

## JURY DEMAND

1.  Plaintiff Marc Andre demands a trial by jury of all issues in this action.

## JURISDICTION, PARTIES AND VENUE

2.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331,

1337, 1343 and 1345.  This action is authorized and instituted pursuant to the Americans with Disabilities Act of 1990 and its Amendment in 2008 (collectively "the ADA").

3.   The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of New York.

4.   Plaintiff Marc Andre ("Andre") resides in Hopewell Junction, New York, Dutchess County.

5.   At all relevant times, defendant Mattress Firm ("Mattress Firm" or "Mattress") has continuously operated as an employer as defined under Title VII and the ADA, has continuously had at least 15 employees.

6.   This Court has jurisdiction over this action pursuant to 42 U.S.C. §12117, 42 U.S.C. §§ 2000e-(5), and 28 U.S.C. §1331, as this case arises under the laws of the United States, in particular the ADA, 42 U.S.C. §12101 *et. seq*.

7.   Venue is appropriate here, because the events about which plaintiff complains occurred where defendant Mattress Firm regularly conducts its business in Fishkill, New York, located in Dutchess County, New York.  This is the appropriate federal court location for actions that arise from acts in that Dutchess County location.

8.   All administrative prerequisites have been met as plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission.  He has satisfied the prerequisites under the ADA and received a Right to Sue Letter from EEOC.

9.   More than thirty days prior to the institution of this lawsuit, Andre filed charges with the Commission alleging violations of the ADA by defendant Mattress Firm.   All conditions precedent to the institution of this lawsuit have been fulfilled.

10. In addition, plaintiff brings an additional claim under New York State

2

Executive Law §§296(1)(a) and §297, the Human Rights Law, alleging that defendant Union

discriminated under the New York Human Rights Law in the first instance as a court action, and

with no required administrative pre-requisites.  Mattress Firm is a covered employer under the

law.

11. As such, plaintiff requests that the court take supplemental jurisdiction of his

claims under the Human Rights Law.  Such substantially overlap with those claims brought here

under the ADA, both as to the lack of reasonable accommodation, the harassment, and the

retaliation against plaintiff.

## FACTS

12. Andre is presently 39-years old. Since his childhood growing up in Tuscon,

Arizona.  Plaintiff Marc Andre has suffered from dyslexia and experienced significant learning

difficulties in his primary and secondary education, failing to ever read at his grade level.  He has

never learned to effectively read, and was diagnosed in grade-school with a severe learning

disorder and later with a disability of dyslexia.

13. Andre has never received sufficient support from any public sources or

education such that he could acquire skills or overcome his disability so as to permit him to read

at a functional level.  In school, he rarely even received books on tape to assist him.  He cannot

presently read beyond an approximate 2nd grade level.

14. Andre's inability to read also substantially affects his ability to use computer

programs and follow computerized directions and entry of information.  He cannot read

effectively and cannot read and comprehend text of any length or complexity.  Andre's spelling

is terrible and he often dictates into his telephone or make great effort to spell phonetically when

he writes or dictates.

15. He was once told by a special education counselor that he was most qualified at graduation to work as a doorman.

16. Despite Andre's inability to read instructions and use any complex computerized ordering systems, he has had a successful career in the sales field since the end of high school.  He started doing stock work in a retail store, and the store promoted him within months to sell car-audio equipment, and later home-audio and home-theater goods.  Later, Andre sold furniture on a commission basis and learned more about the product, from sales managers instructing him and others in a hands-on way about the product.  In this position, he earned substantially more income on a commission basis.  Andre also went on to sell cars, and furniture and bedding, earning a growing livelihood and greater professional success.

17. All along, Andre has viewed his sales positions as visual jobs, with personal interaction and sales skills being paramount, and not written communication.  He has performed his sales jobs in an excellent manner on the basis of his diligence, customer service, hard work, sales skills and product knowledge, despite his inability to research and read in any detail.  He has held these sales positions while working in Arizona and New York.

18. Because of his disability, Andre has generally avoided management positions and any connected administrative and written responsibilities.

19. Andre started his employment at the bedding firm Sleepy's in approximately April 2011 as a salesperson and later Sleepy's promoted him to a position as an Assistant Manager, primarily working at its Fishkill, New York store.  As an Assistant Store Manager with Sleepy's, he supervised and assisted other salespersons selling bedding and other furniture in a retail sales capacity.  Andre also typically worked with a Store Manager assigned to a local store.

20. As a salesperson and Assistant Store Manager, after making a sale of an item,

Andre had always been capable of inputting necessary sales information, such as names, addresses, and credit information, just taking some time with his reading disability to check and input correct information, or collect a license or written information from customers or briefly use a voice activation and translation program.

21. In approximately January 2017, Sleepy's was purchased and became Mattress Firm.  Andre continued his employment in the same capacity after Mattress Firm acquired Sleepy's, and operated as Mattress Firm.

22. In or about January 2017, as part of the purchase, Mattress Firm required employees to obtain training on the operation of Mattress Firm's new computer system. At that time, employees received a large book describing computer protocols and instructions for entering mattress sales and customer information.  Andre immediately realized that he could not read or absorb such long and complicated written information.  At that time, Andre informed his District Manager John Pelletier ("Pelletier") about his dyslexia condition, and Andre told Pelletier that he would need extra help absorbing the information and attending the training because of his difficulties from his disability in absorbing complex written information.

23. In or about approximately April 2017, Andre also worked primarily at another Mattress Firm store located in Newburgh, New York, and did so for approximately eight months. Andre's performance has always been excellent, and his sales skills and management were often complimented.  In fact, Pelletier and other managers told him that he was "one of the best."

24. Indeed, Pelletier told Andre that he would make more money in Newburgh and that he would be "guaranteed a bonus."

25. Andre did not make more money there, and concluded that Pelletier had sent

him there instead because Andre had informed him about his disability and requested some accommodation.  Pelletier also would not even allow Andre to return to Fishkill, after Andre soon asked him to leave the Newburgh location.

26. Soon after Mattress denied Andre's request to leave the Newburgh location, Andre in May 2017 applied by email for the Store Manager position in Fishkill.  Such would have permitted him consistency in working in the same location all week, and he believed he could manage the once-a-month office supply ordering process.  Such also would have substantially improved his compensation.  Pelletier and Mattress Firm denied Andre the promotion.

27. A less qualified individual without Andre's excellent sales record was instead chosen.  Pelletier and Mattress Firm denied Andre the promotion because of his disability, and never gave Andre a reason for their decision.

28. In January 2018, Pelletier informed Andre that all of the salespersons would need to read in full a sales training book called "Sell or Be Sold" and to complete a course workbook with questions and tests.  The book is hundreds of pages long.  Further, Pelletier told Andre that he would be required to copy out and *write out 30 times* a long one-page single spaced description of the "Buying Process."  Such is attached to the Complaint as Exh. A. As part of his disability, Andre also cannot read and then transpose printed narrative, nor absorb its content to keep repeating it on a written page.

29. Andre informed Pelletier and Area Manager Keith Meyer ("Meyer") that he was unable to read the book nor absorb its contents because of his severe reading problems and dyslexia disability.  Andre also told them that he could not take the required written tests on the book.

30. Pelletier responded and told Andre that he was required to complete the book and the tests, and that it would become easier if he kept working at it and doing it.  At some time, Meyer also informed Andre that "I can't give you a pass on this" work, because then all the other salespersons would come and claim they have a disability and ask for an exception.

31. By definition, such statement by Meyer constitutes a refusal to consider, let alone grant, a reasonable accommodation of the job duties, given Andre's disability.  It also constitutes a refusal to engage in the interactive process to consider Andre's disability, the job duties to be performed, and any effective and reasonable accommodations to those duties.

32. However, in or about approximately February 13, Pelletier did attempt some assistance and gave Andre access to his audiobook account, so that Andre could listen to the audio of the required book, supposedly while still simultaneously attempting to read the book's text.  Yet, Pelletier still had not provided Andre with the book itself.

33. The audio text was extremely difficult to use, or to find the correct place in the audiobook.  Because of its non-functionality, Andre asked Pelletier and Meyer repeatedly if he could get some direct hands on training or explanation of the book or video, rather than being required to listen to its full contents, complete the worksheets, or take written tests.  Such may have required some individualized instruction, summarizing, "role-playing," or discussion of the book principle's applications and hypothetical sales situations related to selling at Mattress Firm.  But alternative methods of instruction and testing would not have posed an undue burden to a multi-million dollar company that operates on a nationwide basis.

34. During February, Andre had again asked Pelletier and Meyer for a copy of the

book to assist him, since they had not even provided him a copy, so that he could follow along and read it the best he could with the audiobook sound.  Andre had informed Meyer that following along with the book would assist him, a natural learning device while hearing the text.

35. Meyer's and Pelletier's failure to even provide the book to that date made no sense, since it had been presented to Andre as a job requirement, and had been received by the other salespersons.  Mattress Firm's method of "accommodation" was to provide less than other

36. Instead, during the period from approximately mid-January to the end of February 2018, Meyer or Pelletier asked Andre approximately three times per week how he was doing on the book work and in writing out the repetition of the Buying Process.  Andre felt they were harassing him, since they knew he could not complete the book without a change in instruction method or in writing text over and over.  Nor could he do so without having even yet having received a copy of the book.

37. In fact, for Andre to keep reviewing and writing text over and over causes intense physical effects due to his disability.  Such makes him to be physically sick, nauseous, blurry, and causes head pain and headache to keep straining at that reading and writing, and Andre informed Pelletier and Meyer about that.  Trying to repeat the writing assignment made him anxious and caused his stomach to go into knots when Mattress Firm's supervisors continued to harass him about completing the task.

38. Meyer and Pelletier, upon information and belief, also discussed accommodation of his job duties in front of other salespersons, and this violated Andre's privacy and the ADA.

39. On or about March 1, and less than a week after Andre had belatedly received

8

the book on or about February 25, Meyer repeated that reading the book had been required by Mattress Firm's Divisional President Josh Feinberg, and he wanted to know the status of finishing Andre's completion of the book.  Andre became angry as he had had the book for less than a week (and had lost audio access), and told Meyer that he had repeatedly reminded his managers that they were required to provide him with effective tools and accommodation, just as if he were a disabled individual "in a wheelchair."

40. After that conversation, Andre immediately telephoned Mattress Firm's employee hotline and asked the company for a reasonable accommodation regarding the book training requirements. Andre explained that he could not use the audio or complete the book tasks, that he was happy to learn the content but that he required some effective accommodation for his dyslexia, but that such was not being provided by Mattress Firm and its managers.

41.    On several occasions, Andre spoke with the employee hotline number or HR representative about the lack of accommodation by his managers and Mattress Firm.  In one conversation, an HR representative told Andre that they would refer the issue back to his District Manager so that it would be addressed.

42. Starting in May 2018, Meyer and Pelletier began to assign Andre at times to work as a sales Assistant Manager in New Windsor, New York, which is a much farther commute from his home.  Their reason for requiring Andre to work in that store made no sense, and they assigned him that substantial commute, knowing that it posed substantial difficulties for Andre.  Andre alleges that the change in the conditions of work was retaliation for his complaint and continued requests for a reasonable accommodation.

43. On or about May 31, 2018, Meyer and Pelletier next informed Andre that they

were demoting him from the Assistant Store Manager position, and that he would now be employed as a sales employee, earning less compensation.

44. At the time of the demotion, Andre's managers told him that he was being demoted because he had allegedly failed to report to cover a sales shift as the assistant manager at the New Windsor store on approximately May 28.  This is a pretext for Mattress Firm's discrimination and retaliation.  In fact, quite recently in approximately April 2018, Meyer had told Andre that he didn't care whether he or the regular New Windsor manager covered that store on a day, as long as one of them were there to cover it.  Andre could work in Fishkill instead.

45. Andre's managers' citation to the events of May 28 were pretextual for an additional reason. Both managers already knew that the Store Manager at the New Windsor store had informed Meyers and that she had agreed on May 27 to cover the May 28 shift at that location, it being much closer to her home.  Andre had additionally emailed Pelletier to inform him the day before, informing him that he only had access to one car (due to tornado-related car damage), and that because of that he did not have a car to drive the 40 miles to New Windsor. The New Windsor Store Manager – Andre's *direct supervisor for assignments at that store* – also informed and *confirmed with Andre by text that she had spoken to Pelletier*, writing that she was "going to Vails Gate" (the New Windsor store) and would be covering the store that next day.

46. By 1:30 p.m. on May 28 when Andre had already started his work-day at the Fishkill store, Pelletier telephoned him and told him that he had to go to New Windsor to finish the day, or go home (unpaid).  Andre had no transportation to the New Windsor store, and went home on Pelletier's instruction.

47. Further, the managers continued to decline to assign future shifts at New

10

Windsor to the regular Store Manager who lived in much closer proximity to that store.  After

that, Andre was required to work at the New Windsor store and 2-3 other stores, traveling some

of the week, while working in the demoted "floater" salesperson position.

48. Defendant thus initially denied Andre's application for a promotion to a sales

manager position in 2017, and then later demoted him from the Assistant Manager position, with

loss of income and responsibilities. They verbally harassed Andre on the basis of his disability

about his lack of completion of assignments that he could not perform without reasonable

accommodation.  Following Andre's repeated requests for accommodation and his call to the

hotline, Mattress Firm imposed a further and inconsistent commute to changing store locations,

including the New Windsor store, in retaliation for his continued requests for reasonable

accommodation – as well as because of his disability and inability (without a reasonable

accommodation) to complete the reading and writing training requirements of "Sell or Be

Sold."  Such demotion and change to his store assignments substantially affected Andre's

working conditions.

49. Nor has Mattress Firm made any effort to apply any resources to learn more

about Andre's disability and his dyslexia deficits, nor seek more such information from him or a

health provider.  Mattress Firm has substantial resources at its command to have taken steps to

engage in the interactive process or seek medical advice from Andre, or a health provider with

expertise identified by Andre or sought out by Mattress.  Instead, Mattress made no effort to

evaluate Andre's functioning based on the most current available medical evidence.  It refused to

engage in such an interactive process, nor to explore effective reasonable accommodations to the

job and training requirements that would not have posed an undue burden to the company.

Such could have included functioning audio or video material, individualized discussion of the

"Sell or Be Sold" principles as applied to Mattress's day-to-day operations, verbal exams, and other training and testing accommodations never considered by Mattress.  Such would likely have been effective accommodations, and would not have posed an undue burden to defendant.

50. Even in mid-June 2018, Pelletier sent Andre some email instructions about how to use the computer to enter clock-in and out information when Andre couldn't use the on-line instruction, and even after Andre had asked him that he or someone walk-through the process with him verbally while looking at the on-line computer program.  Pelletier knew Andre needed that help verbally because of his disability.  Andre also wrote Pelletier by email that Pelletier was harassing him at this point, since others were also having difficulties clocking-out, and he knew that his request for help was reasonable.

51. On approximately June 24, 2018, given Mattress' May 31 demotion of Andre to a salesperson position and Andre's floater status with defendant and the change in the working conditions of his employment, Andre resigned his position and began employment as a salesperson selling furniture, starting training with a competitor, Raymour & Flannigan.

## FIRST CAUSE OF ACTION

### ADA

52. Plaintiff repeats and realleges paragraphs 1 through 51 of this Complaint as if set forth herein.

53. Defendant intentionally violated the ADA as alleged above, failed to assess or evaluate any potential accommodations to the training, reading, and testing requirements, and refused to engage in the interactive process of assessing plaintiff's medical condition using the most current available medical evidence.  Defendant refused to respond or consider alternatives to the training process given plaintiff's dyslexia, nor to consider his disability just as if he had

"been in a wheelchair."  Defendant denied plaintiff's request for a reasonable accommodation related to his disability.  Rather than explore or consider effective methods of accommodating the job requirements because of Andre's disability, it determined and applied stereotypical and non-scientific assumptions about dyslexia, and refused to consider Andre's repeated suggestions and requests for reasonable accommodation.

54. Instead, when Andre was unable to complete the initial training requirements, Mattress's managers escalated the issue of communication and interaction in a counterproductive and discriminatory manner by engaging in verbal harassment of Andre because of his disability. On more than approximately a dozen occasions in early 2018, Mattress Firm's managers verbally harassed Andre about how he was doing on completing the book work and in writing out the repetition of the Buying Process, pointedly requesting a status on completion, and continued to harass him in June 2018.  Given Andre's disability, such was clearly a futile request and only served to repeatedly humiliate and harass Andre, and to make him feel "stupid."

55. Further, defendant retaliated against Andre after he had repeatedly requested reasonable accommodation, made suggestions, and telephoned the company's hotline.  Such resulted at various times in the denial of a request for promotion to a Store Manager position, demotion from the Assistant Store Manager position, and change in the terms and conditions of his employment and requiring a further commute to different store locations.

56. As such, defendant's actions harmed Andrer, such that it is liable to him for backpay, lost benefits, attorneys' fees, compensatory damages for emotional harm and humiliation, and punitive damages.

57. Defendant is also liable for punitive damages under Title VII, because in its refusal to grant a reasonable accommodation and its harassment on the basis of Andre's

disability, its actions were taken with malice and reckless disregard for the law.

## SECOND CAUSE OF ACTION

### Disability under Human Rights Law, Executive Law §296 (1)(a) and §297

58. Plaintiff repeats and realleges paragraphs 1 through 57 of this Complaint as if set forth herein.

59. Defendant intentionally violated the Human Rights Law as alleged above, failed to assess or evaluate any potential accommodations to the training, reading, and testing requirements, and refused to engage in the interactive process of assessing plaintiff's medical condition using the most current available medical evidence.  Defendant refused to respond or consider alternatives to the training process given plaintiff's dyslexia, nor to consider his disability just as if he had "been in a wheelchair."  Defendant denied plaintiff's request for a reasonable accommodation related to his disability.  Rather than explore or consider effective methods of accommodating the job requirements because of Andre's disability, it determined and applied stereotypical and non-scientific assumptions about dyslexia, and refused to consider Andre's repeated suggestions and requests for reasonable accommodation.

60. Instead, when Andre was unable to complete the initial training requirements, Mattress's managers escalated the issue of communication and interaction in a counterproductive and discriminatory manner by engaging in verbal harassment of Andre because of his disability. On more than approximately a dozen occasions in early 2018, Mattress Firm's managers verbally harassed Andre about how he was doing on completing the book work and in writing out the repetition of the Buying Process, pointedly requesting a status on completion, and continued to harass him in June 2018.  Given Andre's disability, such was clearly a futile request and only served to repeatedly humiliate and harass Andre, and to make him feel "stupid."

14

61. Further, defendant retaliated against Andre after he had repeatedly requested reasonable accommodation, made suggestions, and telephoned the company's hotline.  Such resulted at various times in the denial of a request for promotion to the Store Manager position, demotion from the Assistant Store Manager position, and change in the terms and conditions of his employment and requiring a further commute to different store locations.

62. As such, defendant's actions harmed Andre, such that it is liable to him for backpay, lost benefits, compensatory damages for emotional harm and humiliation.

**WHEREFORE**, Andre demands judgment against Defendant as follows:

(a)    on the First Cause of Action, an award of statutory damages, including back pay and fringe benefits, compensatory and punitive damages, the exact amount to be proven at trial; including, but not limited to, injunctive relief such as reinstatement to his prior position or front-pay, attorneys' fees, costs and disbursements incurred in connection with this action; and

(b)    on the Second Cause of Action, an award of backpay and fringe benefits, including injunctive relief such as reinstatement to his prior position or front-pay, and costs and disbursements incurred in connection with this action.

Dated: Goshen, New York
      September 11, 2018                         FOULKE LAW FIRM

                                   By:    *s/Michael Ranis, Esq.*
                                  Michael Ranis, Esq. (MBR #3757)
                                  *Attorneys for Plaintiff*
                                  55 Main Street, 2nd Floor
                                  Goshen, NY  10924
                                  845-294-4308