UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MARC ANDRE,  :
               Plaintiff,  :
                         : **OPINION AND ORDER**
v.  :
                         : 18 CV 8244 (VB)
MATTRESS FIRM,  :
               Defendant.  :
------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Marc Andre brings this action against his former employer, defendant Mattress Firm, alleging it discriminated and retaliated against him in violation of the Americans with Disabilities Act of 1990 ("ADA") and the New York State Human Rights Law ("NYSHRL").

      Defendant moves to compel arbitration of plaintiff's claims pursuant to the Federal Arbitration Act ("FAA") and to dismiss or stay the action pending arbitration. (Doc. #16).

      For the following reasons, defendant's motion to compel arbitration is GRANTED, and this action is STAYED pending arbitration.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

**BACKGROUND**

      The following factual background is drawn from the complaint and the parties' submissions in support of and in opposition to the pending motion.

I.     Arbitration Agreement

      In about April 2011, plaintiff began to work as a salesperson at Sleepy's, a bedding and mattress company, at its Fishkill, New York, store. Plaintiff alleges he was later promoted to assistant store manager.

1

Plaintiff also alleges he suffers from dyslexia, a reading disability that impairs his written communication and comprehension skills. According to plaintiff, he reads on a second-grade level, and "cannot read and comprehend text of any length or complexity." (Doc. #5 ("Compl.") ¶ 14). Plaintiff asserts his job performance was nonetheless excellent, and when required to input customer and other sales information, he worked slowly and occasionally relied on assistive technology.

In 2016, Mattress Firm, a national chain, purchased Sleepy's. According to plaintiff, as part of the acquisition, Mattress Firm required Sleepy's employees to be trained on Mattress Firm's sales and employment protocols. Plaintiff alleges he learned that he would need to complete employment forms and review written materials to be eligible for continued employment at Mattress Firm. Plaintiff claims that "[d]uring the summer and fall of 2016," Mattress Firm may have sent plaintiff and other employees an email setting a deadline by which they needed to complete the employment paperwork. (Doc. #21-1 ("Pl. Aff.") ¶ 6). According to plaintiff, he did not read that email. Furthermore, at around that time, plaintiff separated from his common-law wife of fourteen years, who often provided reading assistance. As early as August 2016, plaintiff claims he informed his immediate manager (and later his district manager) that he would need assistance due to his reading difficulties. Despite these requests, plaintiff claims he received no help with the transition materials.

On December 11 or 12, 2016, plaintiff's district manager allegedly told plaintiff the forms needed to be submitted right away if plaintiff wanted to attend Mattress Firm's employment training. On December 12, 2016, plaintiff electronically signed several forms, including a document entitled Mutual Arbitration Agreement ("MAA"), although he alleges he could not understand it. The MAA provides, in relevant part:

> **Arbitration.** Mattress Firm recognizes that differences may arise between an employer and its employees that cannot be resolved without the assistance of an outside party, and it is implementing this Mutual Arbitration Agreement to provide for arbitration as the forum for resolving these differences. <u>By this Agreement, both Mattress Firm, Inc. ("the Company") and you agree to resolve any and all claims, disputes, or controversies arising out of or relating to your application for employment, your employment with the Company, and/or the termination of your employment exclusively by arbitration to be administered by a neutral arbitration agency to be agreed upon by the parties.</u> If the parties cannot reach agreement, the American Arbitration Association ("AAA") shall administer the proceedings pursuant to its Rules for the resolution of employment disputes. Copies of AAA's Rules are available on AAA's website (www.adr.org) or from the Company's Human Resources Department.
>
> **Covered Claims.** Some, but not all, of the types of claims covered are: unpaid wages, overtime, or other compensation; discrimination or harassment on the basis of race, sex, age, national origin, religion, disability or any other unlawful basis; breach of contract; unlawful retaliation; wrongful discharge; employment-related tort claims such as defamation or negligence; and claims arising under any statutes or regulations applicable to applicants, employees, or to the employment relationship.

(MAA at 1) (emphasis added).

II.     Discrimination and Retaliation Claims

About eighteen months later, on June 24, 2018, plaintiff resigned from his position with Mattress Firm. According to plaintiff, this happened after the following events transpired. After he notified his supervisors about his dyslexia, plaintiff was assigned to a new store location in Newburgh, New York, and his application for a promotion was denied in favor of "a less qualified individual without Andre's excellent sales record." (Compl. ¶ 27). Plaintiff also claims his supervisors harassed him for failure to read a required sales training book and complete written exercises on time.

Plaintiff claims he reported the discrimination to defendant's human resources department on several occasions and requested accommodations. While plaintiff admits defendant offered some assistance, plaintiff alleges the response was ultimately inadequate.

3

Before his resignation, plaintiff claims he was demoted to salesperson in retaliation for his reports.

## DISCUSSION

I. <u>Legal Standards</u>

The FAA declares arbitration agreements to be "valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA leaves no place for the exercise of discretion by the district court, but instead mandates that district courts <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." <u>Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP</u>, 434 F. Supp. 2d 211, 214–15 (S.D.N.Y. 2006) (quoting <u>WorldCrisa Corp. v. Armstrong</u>, 129 F.3d 71, 74 (2d Cir. 1997)) (internal quotation marks omitted).

However, "the FAA does not require parties to arbitrate when they have not agreed to do so." <u>Volt Info. Scis., Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ.</u>, 489 U.S. 468, 478 (1989). "The principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms," <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 344 (2011) (internal quotation marks and citation omitted), and an arbitration agreement is interpreted like any other contract. See <u>Rent-A-Ctr., W., Inc. v. Jackson</u>, 561 U.S. 63, 67–68 (2010). Thus, the FAA reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. at 339 (internal quotation marks and citations omitted).

In deciding whether to compel arbitration, a court must first decide whether the parties agreed to arbitrate. <u>JLM Indus., Inc. v. Stolt-Nielsen SA</u>, 387 F.3d 163, 169 (2d Cir. 2004). When determining whether an agreement to arbitrate is valid, "the general rule is that courts

should apply ordinary state-law principles that govern the formation of contracts." T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 344 (2d Cir. 2010) (internal quotation marks and citation omitted); see also Schnabel v. Trilegiant Corp., 697 F.3d 110, 119 (2d Cir. 2012) ("Whether or not the parties have agreed to arbitrate is a question of state contract law."). As such, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

"In the context of motions to compel arbitration brought under the Federal Arbitration Act . . . , the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). "A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010).

II.     Threshold Question of Arbitrability

Defendant argues that because the parties delegated the issue of arbitrability to the arbitrator, the Court should compel arbitration without considering plaintiff's defenses.

The Court disagrees.

It is well settled that "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019). In other words, "if the party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. at 71; Dedon GmbH v. Janus et Cie, 411 F. App'x 361, 363 (2d Cir. 2011) (summary order) (upholding "well-

established precedent that where a party challenges the very existence of the contract containing an arbitration clause, a court cannot compel arbitration without first resolving the issue of the contract's existence").

Because plaintiff directly challenges the validity of the MAA, the Court—not the arbitrator—must decide whether a valid arbitration agreement exists.

III.   Validity of the Arbitration Agreement

Plaintiff argues the arbitration agreement is invalid for four reasons: (i) lack of knowing consent; (ii) duress; (iii) unconscionability; and (iv) unilateral mistake induced by fraud.

For the following reasons, the Court disagrees, and finds that a valid arbitration agreement does exist.

A.   Lack of Knowing Consent

Plaintiff first asserts there was no valid agreement to arbitrate because his dyslexia makes him functionally illiterate, and therefore he could not understand the MAA or knowingly waive his right to a federal forum.

However, under generally accepted principles of New York contract law, "in the absence of fraud or other wrongful act on the part of another contracting party, a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them.'" Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) (quoting Metzger v. Aetna Ins. Co., 227 N.Y. 411, 416 (1920)). This applies to "[p]ersons who are blind or illiterate" as well—they are "not automatically excused from complying with the terms of the contracts which they sign." Sofio v. Hughes, 162 A.D.2d 518, 520 (2d Dep't 1990). Rather, such individuals "must make a reasonable effort to have the document read to [them]." Id.

Assuming plaintiff was unable to understand the arbitration agreement, plaintiff has not demonstrated he made reasonable efforts to have the agreement read to him. Plaintiff concedes he asked only his supervisors for help, but he could have turned to many others for assistance, including his mother, his ex-wife, or his co-workers.[1] Moreover, although plaintiff claims he was placed under "intense time pressure" and told he needed to sign the documents "very soon or even that same day" (Pl. Aff. ¶¶ 12, 19), plaintiff does not allege the forms were unavailable to him in advance. In fact, he states he was aware of the required forms well before he signed them on December 12, 2016.

Because plaintiff fails to allege facts sufficient to rebut the presumption that he knew and assented to the terms of the MAA, his lack of knowing consent argument fails.

B. <u>Duress</u>

Plaintiff next argues the MAA is unenforceable because he signed it under duress, bombarded by repeated requests to sign the forms with insufficient time for review.

Under New York law, a contract or release is voidable if its execution is induced by duress. <u>VKK Corp. v. Nat'l Football League</u>, 244 F.3d 114, 122 (2d Cir. 2001). "In general, repudiation of an agreement on the ground that it was procured by duress requires a showing of both a wrongful threat and the effect of precluding the exercise of free will." <u>United States v. Twenty Milijam-350 IED Jammers</u>, 669 F.3d 78, 88 (2d Cir. 2011) (alteration in original) (quoting <u>In re Gutteplan</u>, 222 A.D.2d 255, 257 (1st Dep't 1995)).

---

[1] Plaintiff's reliance on <u>Cash v. Titan Financial Services, Inc.</u>, 58 A.D.3d 785 (2d Dep't 2009), is misplaced. There, the New York appellate court held a document may be void when the signer is unaware of its nature because he is blind or illiterate <u>and</u> "the contents thereof are misread or misrepresented to him by the other party, or even by a stranger." <u>Id</u>. at 788 (internal quotation and citation omitted). Plaintiff has not suggested anyone misread or misrepresented the MAA to him.

Moreover, "the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." VKK Corp. v. Nat'l Football League, 244 F.3d at 122 (quoting DiRose v. PK Mgmt. Corp., 691 F.2d 628, 633 (2d Cir. 1982)). While New York courts have not established a bright-line rule regarding what constitutes timely repudiation, courts have found that periods from four months to two years exceeded the "prompt" repudiation requirement. See, e.g., United States v. Twenty Milijam-350 IED Jammers, 669 F.3d at 91; VKK Corp. v. Nat'l Football League, 244 F.3d at 123.

Plaintiff signed the MAA in December 2016 and raised no objection to the agreement until he filed his opposition to the instant motion more than two years later in February 2019. Because plaintiff did not repudiate the arbitration agreement in a timely fashion, he has waived his right to argue he signed it under duress.

Accordingly, the Court rejects plaintiff's duress argument.

C.  Unconscionability

Plaintiff claims the MAA is unenforceable because he lacked a meaningful choice in signing it, rendering the agreement unconscionable.

"Unconscionability determinations require both a showing of procedural . . . and substantive unconscionability." Lawrence v. Miller, 11 N.Y.3d 588, 594 (2008). In evaluating claims of procedural unconscionability, courts examine "the size and commercial setting of the transaction . . . whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was a disparity in bargaining power." Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 11 (1988) (internal citation omitted).

To show substantive unconscionability, plaintiff must demonstrate the contract was unreasonably favorable to defendant, and that defendant is seeking to enforce it. See Isaacs v. OCE Bus. Servs., Inc., 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013). When both employer and employee are bound to an arbitration agreement, the terms of which are equally applicable to both, and the employee does not bear any unreasonable costs, there is no substantive unconscionability. See id.

Even assuming plaintiff could show procedural unconscionability, plaintiff has not alleged substantive unconscionability. The MAA binds both plaintiff and Mattress Firm, with terms equally applicable to both parties, and is silent on costs. As plaintiff asserts only procedural deficiencies, the arbitration agreement is not void for unconscionability.

Accordingly, the Court rejects plaintiff's unconscionability argument.

D. Unilateral Mistake

Finally, plaintiff argues the MAA is unenforceable, because plaintiff mistakenly believed—and his supervisors encouraged him to believe—the document was merely an employment commitment to Mattress Firm.

"A unilateral mistake, standing alone," does not invalidate a contract. Angel v. Bank of Tokyo-Mitsubishi, Ltd., 39 A.D.3d 368, 369–70 (1st Dep't 2007). Under New York law, to void a contract on the basis of unilateral mistake, a plaintiff must show "(i) he entered into a contract under a mistake of material fact, and that (ii) the other contracting party either knew or should have known that such mistake was being made." Creative Waste Mgmt., Inc. v. Capital Envt'l Servs., Inc., 429 F. Supp. 2d 582, 599 (S.D.N.Y. 2006) (quoting Ludwig v. NYNEX Serv. Co., 838 F. Supp. 769, 795 (S.D.N.Y. 1993)). The moving party must also demonstrate he exercised ordinary care, particularly when "the means of knowledge were easily accessible." Summit

9

Health, Inc. v. APS Healthcare Bethesda, Inc., 993 F. Supp. 2d 379, 405 (S.D.N.Y. 2014) (quoting Consumers Union of U.S., Inc. v. Campbell, 1989 WL 304762, at *5 (S.D.N.Y. Nov. 16, 1989)).

The MAA is not void due to unilateral mistake. As discussed above, plaintiff has not demonstrated he exercised ordinary care to discover and understand the nature and contents of the agreement prior to signing it.

Accordingly, the Court rejects plaintiff's unilateral mistake argument.

As plaintiff has not raised a meritorious challenge to the arbitration agreement, the Court finds the MAA is valid and enforceable, and compels arbitration of plaintiff's claims.

IV. Stay Pending Arbitration

It is settled law in this Circuit that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." Katz v. Cellco P'ship, 794 F.3d 341, 347 (2d Cir. 2015). As a result, it is proper to stay, not dismiss, this action pending arbitration.[2]

**CONCLUSION**

Defendant's motion to compel arbitration is GRANTED, and the parties are ORDERED to arbitrate the case pursuant to the terms of the Mutual Arbitration Agreement. This action is hereby STAYED pending arbitration, and pending further order of the Court.

An arbitrator shall be appointed in accordance with the following procedure: The parties shall promptly confer for the purpose of agreeing upon a "neutral arbitration agency" to arbitrate plaintiff's claims. If the parties are unable to agree upon an arbitrator, the Court shall appoint the

---

[2] Oddly, defendant cites several cases in the Second Circuit for the proposition that courts "routinely" dismiss complaints under these circumstances, all of which were decided before Katz v. Cellco P'ship; Katz makes it clear that a stay, not a dismissal, is required.

10

American Arbitration Association ("AAA") to arbitrate the matter pursuant to its rules for the resolution of employment disputes. By August 2, 2019, the parties shall inform the Court by joint letter whether they have agreed upon an arbitrator or whether the Court should appoint the AAA as the arbitrator.

The parties shall inform the Court by joint letter of the status of the arbitration by November 30, 2019, and every ninety days thereafter. Additionally, within ten days of completion of arbitration, the parties shall provide a joint status report to the Court.

The Clerk is instructed to terminate the motion (Doc. #16) and stay this case.

Dated: July 12, 2019
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge